UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                                    Criminal No. 12-94 DWF/AJB

                Plaintiff,

v.                                                            **REPORT AND RECOMMENDATION**

BRADY ANTHONY JOHNSON,

                Defendant.

    Leeann K. Bell, Esq., and Kevin S. Ueland, Esq., Assistant United States Attorneys, for the plaintiff, United States of America;

    James Becker, Esq., and Katherian D. Roe, Esq., for the defendant, Brady Anthony Johnson.

        This action came on for hearing before the Court, Chief Magistrate Judge Arthur J. Boylan, on May 14, 2012, at the U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415.  Testimony was presented at the hearing with regard to motions to suppress identification evidence, statements, and evidence obtained by search and seizure.

        Based upon the file and documents contained therein, along with testimony presented at hearing, the magistrate judge makes the following:

**Findings**

        Minneapolis Police officers were dispatched to the TCF Bank at 1444 West Lake Street at approximately 9:00 a.m. on March 28, 2012, based upon a report of a bank robbery which had occurred a few minutes earlier.  The report indicated that the suspect was a black male, 30 years old, medium build, and wearing a black hooded sweatshirt.  Minneapolis Officer Jeffrey Parker was immediately dispatched directly to the TCF Bank and arrived within three

minutes, at 9:03 a.m. Officer Parker went inside the bank where he met with the manager and the victim teller. The officer was told that two men had been observed near an ATM in the bank vestibule prior to the robbery, including a tall, heavy set black male, dressed in black. The teller specifically described the bank robber as a black man, 35-40 years old, and wearing black pants and a black sweatshirt over a white tee shirt. Officer Parker promptly conveyed this description to dispatch. The teller first noticed the man shortly after the bank opened, and thereafter he approached her at the counter in lane #5. The man stated "[t]his is a robbery" and further stated that he wanted the $50 and $100 dollar bills. The teller first thought that the man was joking but became fearful as she observed the robber keeping a hand in his front pocket and motioning as though he was holding a gun. She gave him money as demanded and subsequently gave him additional smaller denomination bills when he asked for more. Among the money handed to the robber were "bait bills" and a GPS tracking device.

Meanwhile Minneapolis Officer Wisocki also responded to the initial dispatch by going to the TCF Bank by squad car, but he was diverted to nearby 24th Street and Hennepin Ave. upon learning the GPS tracking device was sending a signal from that area. An off-duty police officer then reported that an MTC bus was the only vehicle in the immediate vicinity. Officer Wisocki met the MTC bus at a bus stop at 24th Street and Harriet Ave. Several other squad cars had also arrived at the scene and officers neared the bus from both the driver's side and the passenger side with guns drawn. Officer Wisocki first approached from the driver's side and could see the suspect on the bus. When Wisocki went to the door on the passenger side, the suspect, defendant Brady Johnson, was already standing at the front door. Officers ordered the defendant out of the bus and onto the ground. He complied without resistance, and was

immediately handcuffed based upon the description provided by dispatch and the report that the robbery may have involved a gun. Officer Wisocki observed wads of money, some in bank wrappers, sticking out of the defendant's sweatshirt pocket. A pat search was conducted and the GPS tracking unit was found with the money.

**Show-up.** Defendant Brady Johnson was placed in custody at the bus stop and put into a squad car for transport to the police station. Officer Parker learned of the detention at 9:06 a.m. while he was still interviewing the teller at the TCF Bank. Parker requested that the victim teller participate in a show-up identification procedure and she agreed. As they left the bank the officer explained where they were going. Officer Parker and the victim arrived at the scene at approximately 9:30 a.m. and the officer parked his squad car east of several police vehicles that were at the location. The victim stayed in the car while Parker determined which vehicle the suspect was sitting in and conferred with Officer Moore about the show-up. A few minutes later the suspect was standing outside of a squad car, without handcuffs, 30-40 feet from the victim's location. The teller then got out of the car and immediately said "yes, that's him" and was placed back into the car.

**Statements.** After the show-up procedure defendant Johnson was formally arrested and again placed in handcuffs for transport to the police station. During the transport the defendant stated "guess someone saw [me] get on the bus." The defendant's comment was spontaneous and was not made in response to questioning by an officer.

Based upon the foregoing Findings, the magistrate judge makes the following:

3

**Conclusions**

      **Search and Seizure**.  Suppression of evidence obtained as a result of a search of the person of defendant Brady Anthony Johnson on March 28, 2012, is not required.  Reasonable suspicion justifying the defendant's stop and search existed under circumstances in which his physical stature and clothing closely matched the description of the robber provided to officers by the bank teller, wrapped and loose cash was observed sticking out of the suspect's pocket, the robber had made suggestive movements to indicate that he was carrying a weapon in his pocket, and the GPS tracking devices had sent signals consistent with the path of the bus on which the defendant was located.  Defendant was lawfully stopped and detained and the pat search by Officer Wisocki was properly conducted for purposes of officer safety, particularly in light of the bank robber's implied possession of a weapon.  Terry v. Ohio, 392 U.S. 1, 27-30, 88 S.Ct. 1868, 1883-85 (1968).

      **Show-up.**  Suppression of identification evidence on grounds that a witness identification of the defendant was made pursuant to constitutionally impermissible show-up procedures is not required.  Defendant Brady Johnson was not subjected to overly suggestive identification procedures at the scene of his detention under circumstances in which he was identified by a person who had observed him only minutes prior to making the identification.  Even if the court were to assume that the pretrial confrontation in this instance was impermissibly suggestive, the court concludes that the identification was not made under circumstances that would create a substantial likelihood of misidentification and is unreliable on that ground.  United States v. Jones, 535 F.3d 886, 891 (8th Cir. 2008)(citing United States v. Martinez, 462 F.3d 903, 910 (8th Cir. 2006)).  In particular, the court finds that the identifying

witness had ample opportunity to view the suspect prior to and during the robbery at the TCF Bank.  The witness had direct contact with the suspect and was able to provide accurate physical and clothing descriptions.   Furthermore, the witness demonstrated no hesitancy and a high level of certainty at the time of the show-up.  Jones at 891 (quoting factors cited in United States v. Williams, 340 F.3d 563, 567 (8th Cir. 2003)).  Under the totality of the circumstances relating to the show-up identification in this matter, there is minimal likelihood of misidentification by the witness, and defendant's motion to suppress identification evidence should therefore be denied.

**Statements.**  Defendant Brady Johnson's statements to Officer Wisocki were not obtained in violation of the defendant's constitutional rights and suppression of the statements is not required.  Defendant's comments to Officer Wisocki while being transported to the police station were spontaneous and voluntary and were not made in response to questioning by the officer.  Though the remarks were made while defendant was in custody, they were not made in response to law enforcement interrogation and were not the product of an unlawful arrest.  The statement was initiated by the defendant and there were no comments or responses by the officer which could be characterized as interrogation.  United States v. Chips, 410 F.3d 438, 445 (8th Cir. 2005).  Because the statements were spontaneous and were not a consequence of police interrogation, they were not obtained in violation of the defendant's Fifth Amendment privilege against self-incrimination or other rights under Miranda.  Furthermore, the statements were not the result of defendant's will being overborne through police coercion or pressure and were not obtained in violation of defendant's Fifth Amendment Due Process rights on that account.

Based upon the foregoing Findings and Conclusions, the Magistrate Judge makes the following:

## RECOMMENDATION

The Court **hereby recommends** that:

1. Defendant Brady Anthony Johnson's Motion to Suppress Eyewitness Identifications be **denied** [Docket No. 19];

2. Defendant Brady Anthony Johnson's Motion to Suppress Evidence Obtained as a Result of Search and Seizure be **denied** [Docket No. 20]; and

3. Defendant Brady Anthony Johnson's Motion to Suppress Statements, Admissions and Answers be **denied** [Docket No. 21].


Dated:   May 23, 2012

                                                s/Arthur J. Boylan
                                               Arthur J. Boylan
                                               United States Chief Magistrate Judge


Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before June 6, 2012.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.